# N. Y. COMMON PLEAS.

## MARY ELIZA HYNES agt. KATE McDERMOTT.

*Examination of parties before trial — secs. 870 and 872 Code of Civil Procedure — sufficiency of affidavit on application for order.*

The examination of an adverse party before trial, provided for by sections 870 and 872 of the Code of Civil Procedure, is not a mere substitute for the former remedy by bill of discovery.

The provisions of these sections are far more than that. They provide a simple plan of perpetuating testimony, and were intended as a substitute for article 5, chapter 7, title 3, part 3, Revised Statutes (2 *R. S.*, 398, 399). Section 872 embraces the equitable remedy of perpetuating testimony, as well as the equitable remedy of a bill of discovery, and under it a defendant is entitled to obtain the testimony of a plaintiff, as a means of repelling his action.

In order to procure the examination of an adverse party before trial, under sections 870 and 872 of the Code of Civil Procedure, it is not necessary that the applicant should present to the court an affidavit embodying all or the major part of the allegations that were requisite in a bill of discovery.

It is sufficient under these sections to state in the affidavit that the testimony of the party sought to be examined is *material and necessary,* and without any further statement it would seem to be imperative upon the court to grant the order; it is not necessary to state the very *facts and circumstances,* which the rules of equity pleading would have required to be stated in a bill of discovery. (DALY, *Ch. J., dissenting.*) (*See Phœnix* agt. *Dupuy,* 53 *How.,* 158, *and Shepmwes* agt. *Bousson,* 52 *id.,* 401.)

Section 873 declares that the judge must grant the order when an affidavit is presented to him *setting forth* certain allegations. The applicant is not bound "*to make it appear*" to the judge, that is to convince him, by a mass of evidence, positive, direct or circumstantial, that those allegations are founded upon fact. The law requires the judge to take the applicant's word for them.

The plaintiff brought her action of ejectment. The defendants denied her right to the land in suit. The plaintiff alleged that she was the widow of the man from whom the defendants had inherited the property in controversy. The defendants had never heard that their brother,

whose heirs they were, had ever been married. After issue joined, they sought to examine the plaintiff as a party before trial.

*Held*, that this was a proper case for such an examination.

*General Term, November*, 1877.

VAN HOESEN *J.* — Upon the application of some of the defendants, judge VAN BRUNT made an order, under section 872 of the Code of Civil Procedure, for the examination of Mary Eliza Hynes, one of the plaintiffs, as a party before trial. That order was vacated and set aside by judge J. F. DALY, who held that the Code of Civil Procedure had not changed the law as it was established by sections 389, 390 and 391 of the old Code of Procedure. An appeal was taken from the order of judge J. F. DALY, and the question presented to us is, whether, in order to procure the examination of the adverse party before trial, under sections 870 and 872 of the Code of Civil Procedure, the applicant must present to the court an affidavit embodying all or the major part of the allegations that were requisite and necessary in a bill of discovery?

It was held by the general term of this court in *Phœnix* agt. *Dupuy* (53 *How.*, 158), and by the special term (judge ROBINSON) in *Schepmoes* agt. *Bousson* (53 *How.*, 401), that sections 389, 390 and 391 of the Code of Procedure, were a mere substitute for the bill of discovery in the old chancery practice; and that an examination of a party to an action could not be had by his adversary, until the latter had shown, by affidavit, the very facts which the rules of equity pleading would have required him to state in a bill of discovery. Those decisions are binding upon the court, and I do not question them. The court of appeals alone can pass upon their correctness.

We have now before us a new statute, the provisions of which are very different from the language of the former Code. It cannot be truly said that sections 870 and 872 of the Code of Civil Procedure are a mere substitute for the bill of discovery. They are far more than that. They provide a

·simple plan of perpetuating testimony, and were intended, doubtless, as a substitute for article 5, chapter 7, title 3, part 3 Revised Statutes (2 *R. S.*, 398, 399). As everybody knows, those provisions of the Revised Statutes were intended to .save the suitors the trouble and expense of filing a bill in equity to perpetuate testimony. It is not worth while to con-·sume time and space by reciting what averments were neces-·sary in a bill to perpetuate testimony. Volume 2, Barbour's Chancery Practice, marginal pages 137–145, and volume 2, Story's Equity Jurisprudence, sections 1506–1512, are full upon that subject. I think it necessary to call attention to one matter, however, which will occasion trouble to those who believe that the rules relating to bills of discovery are still in force: "A bill to perpetuate testimony will lie in many cases where a bill of discovery would not lie. Thus, in cases involving a penalty or forfeiture of a public nature, a bill of ·discovery would not lie at all; and in cases which involve forfeitures or penalties of a private nature, it will not lie, unless the party entitled to the benefit of the penalty or forfeiture, waives it. But no such objection exists in regard to a bill to perpetuate testimony ; for the latter will lie, not only in cases ·of a private penalty or forfeiture, without waiving it where it may be waived, as in cases of waste or of the forfeiture of a lease, but also in cases of public penalties, such as for the forgery of a deed, or for a fraudulent loss at sea" (2 *Story's Equity Jurisprudence, sec.* 1509).

There is a further distinction. A bill to perpetuate testimony will lie against a *bona fide* purchaser without notice, though a bill of discovery is not maintainable against him {2 *Story's Eq. Jur.*, *sec.* 1510). Now, as sections 870 and 872 are a substitute for the bill to perpetuate testimony quite as much as for the bill of discovery, and as there is just as much authority for applying the doctrines of the bill to perpetuate testimony as there is for applying the doctrines relating to bills of discovery, I should like to know which of these two · irreconcilable methods of procedure is to control the other.

Hynes agt. McDermott.

Furthermore, if it be right to insist that an affidavit of the party seeking to examine his adversary shall contain all the allegations of a bill of discovery, why ought it not also to contain all the allegations requisite in a bill to perpetuate testimony? Again, the language of sections 872 and 873 very distinctly prescribes what the affidavit shall state. It specifies what the affidavit shall *set forth*. It is to be observed that the section does not provide that the judge shall grant an order for the examination "*when it shall appear* by affidavit that sufficient grounds exist therefor" (*see secs.* 181, 220, *and* 229, *Code of Procedure*), where that language has been employed, the courts having uniformly construed it as giving them power to require a full and detailed statement of the facts by which it is made to appear that the applicant is entitled to the order he asks for. Section 873 declares that the judge must grant the order when an affidavit is presented to him *setting forth* certain allegations. The applicant is not bound "to make it appear" to the judge, that is to convince him, by a mass of evidence, positive, direct or circumstantial, that these allegations are founded upon fact. The law requires the judge to take the applicant's word for them.

Where an attachment is applied for, the plaintiff must show by affidavit, *to the satisfaction of the judge*, the facts entitling him to it (*Code of Civil Procedure, sec.* 636).

Section 557, which relates to orders of arrest, and section 607, which relates to injunctions, are, in substance, the same as sections 181 and 219 of the Code of Procedure, and were doubtless intended to be construed in the same way. It was known that affidavits setting out in detail the facts making an arrest or an injunction proper, would, in all cases, be required by the judge. But, as I have already pointed out, the language of sections 872 and 873 is very different. The very change of words carries with it a strong presumption that the legislature did not intend that the same kind and the same amount of proof should be required as on an application for a provisional remedy. In language so plain that it cannot

Hynes agt. McDermott.

be misunderstood, the Code prescribes what the affidavit shall contain, and I know of no authority except the law-making power which can lawfully require any extra allegations (*Glenny* agt. *Stedwell*, 64 *N. Y.*, 128).

I have already said that section 872 was a substitute for that portion of the Revised Statutes entitled, Of Proceedings to Perpetuate Testimony. The language of the Revised Statutes is not so clear and unmistakable as the language of section 872, and yet no one of the eminent judges who passed upon article 5, ever thought it necessary to tack it to the chancery rules relating to bills to perpetuate testimony. In *Jackson* agt. *Perkins* (2 *Wend.*, 308), the supreme court gave the statute a liberal construction. And in *The Matter of Kip* (1 *Paige R.*, 601), the affidavit stated that certain actions of ejectment were pending, and that the testimony of Isaac L. Kip was material and necessary in the prosecution of the suits. There was no statement in the affidavit of any fact which made it necessary or proper for a court of equity to lend its aid, and, of course, as a bill to perpetuate testimony the affidavit would have been fatally defective, but, yet, chancellor WALWORTH seems to have had no doubt that the affidavit was sufficient.

In his opinion, the chancellor makes some observations, which apply as completely to section 872 of the Code of Civil Procedure as they applied to the statute which the chancellor was expounding.

"By the act under which these proceedings were instituted, it was the intention of the legislature to give to the master, or other officer, power to take testimony, and to compel the witnesses to give evidence in the same cases and to the same extent that the court would be authorized to compel the witness to testify on the trial of the cause. It does not authorize the examination of a witness who would not be compelled to testify on the trial. The witness is not obliged to criminate himself, or answer any question which he would not be bound to answer if examined in open court. If the testimony is calcu-

lated to criminate the witness, render him infamous, or to subject him to a forfeiture or penalty, the officer has no right to compel him to testify. So, if the master is satisfied the testimony can have no possible bearing upon the questions which may arise in the cause, he ought not to compel the witness to answer, especially when a reasonable objection is urged by him. The officer must necessarily have some discretion on this subject, and he may require the party, on whose application the examination is made, to explain the nature of the litigation, so far as to enable him to judge whether such applicant is proceeding in good faith to perpetuate testimony, or is, under that pretense, only fishing for testimony to be used against the witness, or for other purposes. On this subject the officer must be permitted to judge, and he is not bound to commit the witness for refusing to answer, if he thinks the question ought not to be answered."

These observations prove conclusively that, in proceedings under the statute, which the chancellor was construing, fishing inquiries are to be stopped by the officer before whom the examination is going on, there being no authority for requiring an affidavit from the applicant, specifying in detail the particular facts which it is sought to prove by the witness (2 *Tillinghast & Shearman Pr.*, 376 ; *Yates' Pleadings, p.* 82 ; see 62; *Graham's Practice*, 589 ; 2 *Phillips on Evidence, 4th Am. ed., edited by Isaac Edwards*).

When the simplicity of our system of practice is considered, there seems to be no necessity for requiring in an affidavit the fullness of averment that was necessary in a bill of discovery. A bill of discovery required a written answer. If the defendant answered at all, he was compelled to answer all the facts stated in the bill, except when he was specially protected from answering.

If he failed to answer, an injunction might be obtained restraining him from prosecuting or from defending the action at law, or the bill might be taken *pro confesso* against him, and then offered, on the trial at law, as an admission on

Hynes agt. McDermott.

his part of all its allegations (*Daniell's Chancery Practice*), or he might be arrested and imprisoned until he answered (*Equity Rule* 18, *U. S. supreme court*). Before any of these stringent proceedings should be taken, it was right to call upon the complainant to show the utility and the necessity of the discovery which he sought. The answer was not made nor were the interrogatories propounded in the immediate presence of the judge, and there was, therefore, no way in which the defendant could be protected from a fishing inquiry save by the judge seeing to it, in the first instance, that the object of the complainant was legitimate, and that his interrogatories were so framed as to call forth only such information as he had a right to demand. In New York, however, the examination is had under charge of the judge. If the judge performs his duty, a party cannot put a fishing question without being checked by the bench (*Glenny* agt. *Stedwell*, 64 *N. Y.*, 123). The party under examination may object to any question, the same as upon a trial, and the objection may answer all the purposes of a demurrer to a bill of discovery. In short, in our practice, the main, the interrogative, part of a bill of discovery, and the demurrer, plea or answer thereto, are not in writing, but are oral, and are presented by the parties in open court. There is no need, therefore, of precautions against improper and fishing examinations.

It is said that the examination of parties before trial tends to promote abuses. To that I can make no better answer than is found in the opinion of the court of appeals, in *Glenny* agt. *Stedwell* (64 *N. Y.*, 123). "It is not a sound argument which reasons against the existence of a right from the possibility of the abuse of it."

It will be seen that the foregoing observations are not limited to the case under review.

But, even if I am in error in the views I have expressed, I think the affidavit of Mr. Balestier sufficient to sustain judge VAN BRUNT's order. The plaintiff brought her action of

ejectment. The defendants denied her right to the land in suit. The plaintiff alleged that she was the widow of the man from whom the defendants had inherited the property in controversy. The defendants had never heard that their brother, whose heirs they were, had ever been married. After issue joined, they sought to examine the plaintiff as a party before trial. If there ever was a case in which such an examination ought to have been had, it seems to me this is the very one. In what way were they to discover when and where the plaintiff, of whose history they were utterly ignorant, and of whose existence they had just become aware, married their brother? How could they prepare for trial? What reason, except the extremely technical one given by judge DALY in setting aside judge VAN BRUNT's order, was there for preventing the examination of the plaintiff as to the issues raised by the pleadings? In lord HARDWICKE's time, just such an examination could have been had in chancery, for in *Metcalfe* agt. *Hervey* (1 *Vesey, Sen.*, 248) the great chancellor said :

" The question comes to this, whether any person in possession of an estate as tenant, or otherwise, may not bring a bill to discover the title of a person bringing ejectment against him, to have it set out and seen ; and he was of opinion he might, to enable him to make a defense in ejectment." I am aware that that case has been frequently disapproved, but never, so far as I know, by the court of appeals.

Again, section 872 embraces, as I have said, the equitable remedy of perpetuating testimony, as well as the equitable remedy of a bill of discovery ; and a bill to perpetuate testimony lay not only to obtain proof in support of the plaintiff's action, but also to obtain proof of matters of defense to repel it (2 *Story's Equity*, 1509, *citing Earl of Suffolk* agt. *Green*, 1 *Atk.*, 450).

I think the defendants were entitled, therefore, to obtain the testimony of the plaintiff, as a means of repelling her action.

I am in favor of reversing the order of judge DALY, with costs and disbursements.

LARREMORE, *J.* — Having concurred in the decision (*Phœnix* agt. *Dupuy*, 53 *How.*, 158), I have sought to apply the same ruling in this case. But a marked distinction is found in the phraseology of the statute authorizing an examination of a party before trial.

The case first mentioned was under sections 389–395 of the old Code, the proceeding under which is in the nature of the former remedy by bill of discovery (*Glenney* agt. *Stedwell*, 64 *N. Y.*, 174).

Section 391, of the old Code, provided that the examination of a party, instead of being had at the trial might be had at any time before the trial, at the option of the party. Under this statute, the examination has, in some instances, been held to be a statutory right, and beyond judicial discretion.

But this application is under sections 870–873 of the Code of Civil Procedure, which appear to be mandatory in terms, and to have been adopted to meet and remove a variance of opinion upon the construction of the former statute.

Whatever may be the effect of Rule 89, of the supreme court, it was not in operation when this application was made, and the defendants stand upon the law in force in September, 1877.

It is unnecessary to consider what limitations might be imposed by the court upon such an examination, but defendants' right to the order for it, seems to be authorized by law, and a matter of right upon the papers presented.

DALY, *C. J.* (*dissenting*). — The main point relied upon for the reversal of this order is, that it was sufficient, under the new Code, simply to state, in the affidavit, that the testimony of the plaintiff was material and necessary for the defense of the action, " which, without any further statement, made

it imperative upon the court to grant the order," is disposed of by referring to Rule 89, adopted at the convention of judges, last October, which declares that the affidavit "shall *specify* the *facts* and *circumstances which show*, in conformity with subdivision 4 of section 872, that the examination of the person is material and necessary."

After this general statement, it is averred that the examination is material and necessary for many reasons. The reasons given are, that the plaintiff, Mary E. Hynes, claims to be the widow of W. R. Hynes ; that the marriage, if any, was consummated in England, where Hynes and she resided ; that the defendants did not know of the existence of the plaintiff's or of Hynes' connection with them until after his death ; and that there are many facts, occurrences and circumstances, within the knowledge of the plaintiff, Mary E. Hynes, and which, in the nature of things, the defendants could not have any knowledge of, necessary and material for the defendants to inquire into for the purpose of properly preparing their defense in the action, *many of them facts*, which they can learn from no other source. Not a single fact, however, is stated, nor any indication of the nature or materiality of the evidence sought to be elicited. That this is not, and never was sufficient to compel such an examination, will appear by referring to *Phœnix* agt. *Dupuy* (53 *How.*, 158), and the authorities there cited.

The order should be affirmed.